UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JEFF OYEN and RANDY JOHANSON, | ) | CIV. 07-4112 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LAND O'LAKES INC.; CROPLAN | ) | |
| GENETICS; FORAGE GENETICS, INC., | ) | ORDER GRANTING |
| | ) | MOTION TO COMPEL |
| Defendants and | ) | BY PLAINTIFFS |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ABI ALFALFA INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HOEGEMEYER HYBRIDS, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**INTRODUCTION**

This matter is before the court on an amended complaint filed by

plaintiffs Jeff Oyen and Randy Johanson alleging diversity jurisdiction and

federal question jurisdiction under 28 U.S.C. §§ 1331, 1332.  Plaintiffs served

defendant Land O'Lakes, Incorporated with interrogatories and requests for

production.[1]  Although Land O'Lakes responded to those discovery requests,

plaintiffs believe that full and complete answers have not been given in some

instances and that certain objections to the discovery made by Land O'Lakes

are not supported.  Accordingly, after conferring with opposing counsel and

making a good faith effort to resolve this matter informally, plaintiffs filed a

motion seeking the court's order compelling Land O'Lakes to respond fully to

plaintiffs' discovery requests.  See Docket No. 38.  The district court, the

Honorable Karen E. Schreier, Chief Judge, referred this matter to this

magistrate judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A).

## FACTS

The facts pertinent to the motion pending before the court are as follows.

Plaintiffs have filed an amended complaint against Land O'Lakes alleging

claims arising out of their purchase from Land O'Lakes of "Ameristand 407TQ"

(hereinafter "407TQ") alfalfa seed.  Plaintiffs allege that they purchased this

seed from Land O'Lakes based on representations about the seed made by a

salesman for Hoegemeyer Hybrids and based upon advertisements by Land

O'Lakes that said 407TQ alfalfa seed contained patented Traffic Tested®

---

[1]The interrogatories asked Land O'Lakes to "identify" documents.  Then
an omnibus request for the production of documents was served asking Land
O'Lakes to produce any document identified in the answer to an interrogatory.
Thus, the requests for production are coterminous with the interrogatories and
will not be separately addressed.

genetics that were proven in University and USDA trials and that 407TQ was a proven high yielding variety bred to withstand heavy traffic.

Plaintiffs allege further that, after planting the 407TQ in their fields, they drove on those fields several times while cutting, raking, baling, and stacking their alfalfa hay. Plaintiffs allege that the 407TQ was not, in fact, resistant to traffic as advertised.

Plaintiffs allege that the labels on the seed bags of the 407TQ sold to them indicated that the bag contained AmeriStand 407TQ alfalfa seeds produced by America's Alfalfa®. Further, plaintiffs allege that ABI Alfalfa warranted that the seeds in the bags conformed to the label description. Plaintiffs allege that, despite the warranty on the label, the seeds contained in the bags they bought were not the original formula/recipe of 407TQ which contained the patented Traffic Tested® genetics. ABI Alfalfa Inc. is alleged to be owned or operated by, or a subsidiary of, defendant Land O'Lakes. Based on the factual allegations, plaintiffs assert claims of: (1) breach of warranty (two counts), (2) fraud/deceit, (3) negligence, (4) a Lanham Act violation, (5) and falsely advertising that their product contained patented genetics.

Land O'Lakes answered the amended complaint by admitting that ABI sold substantially all its assets, including seed assets, to Land O'Lakes. As to the factual allegations asserted in support of plaintiffs' claims, Land O'Lakes asserted either that it was without knowledge or information sufficient to admit

those allegations, and therefore denied, or it denied the allegations outright.  In addition, Land O'Lakes asserted the following affirmative defenses:  (1) failure to state a claim, (2) failure to join indispensable parties, (3) contributory negligence more than slight on the plaintiffs' parts, (4) failure to mitigate damages, (5) lack of proximate causation, (6) plaintiffs are barred from proceeding due to a binding arbitration clause, (7) failure to allege fraud with sufficient particularity, and (8) lack of subject matter jurisdiction on the diversity claims due to failure to meet the amount in controversy requirement.

On February 12, 2008, plaintiffs served Land O'Lakes with interrogatories and requests for the production of documents.  Land O'Lakes objected to many of these requests on the grounds that they called for the production of confidential information.  The parties then stipulated to the entry of a protective order, which the district court signed.  The order provided protection for the disclosure of confidential, proprietary, and trade secret information.  Nevertheless, even after the entry of this protective order, discovery disputes remained.  After being unable to resolve these disputes with Land O'Lakes, this current motion was filed.

## DISCUSSION

### A.     Scope of Discovery Under Rule 26

Federal Rule of Civil Procedure 26(b)(1) sets forth the standard governing the scope of discovery in civil cases:

(1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

See Fed. R. Civ. P. 26(b)(1).

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. . . . In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See Fed. R. Civ. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. Id.; see also Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 635 (D.Minn. 2000) ("[T]he threshold requirement of discoverability is whether the information sought is 'relevant to the subject matter involved in the pending action.'") (quoting Shelton v. American Motors Corp., 805 F.2d 1323, 1326 (8th Cir. 1986)). Limiting discovery to relevant information is a necessary restriction on otherwise liberal discovery rules:

While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery), this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

<u>Hofer v. Mack Trucks, Inc.</u>, 981 F.2d 377, 380 (8th Cir. 1993) (internal citations omitted).

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." <u>See</u> Fed. R. Civ. P. 26(b)(1) advisory committee's note. Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit..." <u>See</u> Fed. R. Civ. P. 26(b)(2)(C); <u>see also</u> <u>Roberts v. Shawnee Mission Ford, Inc.</u>, 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); <u>Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton</u>, 136 F.R.D. 682, 684-85 (D.Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden."). "Typically, the burden is on the party resisting discovery to explain why discovery should be limited given that the Federal Rules allow for broad discovery." Here, the initial burden is on plaintiffs to show how the information sought through the discovery requests that have been served are relevant to

the subject matter of their case.  The burden then shifts to Land O'Lakes to show that the information requested is not discoverable.

**B.    Application of the Law to Individual Discovery Requests**

Plaintiffs' interrogatories seek information about 407TQ alfalfa seed, but also seek information about three other varieties of alfalfa seed: (1) Ameristand 403T alfalfa seed and (2) Ameristand 404LH alfalfa seed, and (3) Ameristand 405T alfalfa seed.  In their motion to compel, plaintiffs seek the court's resolution as to 8 identified interrogatories to which Land O'Lakes objected.[2]

**1.    Information Requested as to 404LH and 405T Varieties**

Many of plaintiffs discovery requests include requests for information about 404LH and 405T varieties of seed sold by Land O'Lakes.  Plaintiffs argue that, even though they did not purchase these types of alfalfa seed, nevertheless plaintiffs should be allowed to conduct discovery in this area because Land O'Lakes marketed and advertised 404LH and 405T in the same

---

[2]Plaintiffs on page 3 of their brief identify 16 interrogatories that they assert Land O'Lakes has not fully answered.  On page 4 of their brief, plaintiffs identify 17 interrogatories that they allege Land O'Lakes did not fully answer. There is some overlap between the two lists of interrogatories, but they are not identical.  However, plaintiffs only explain their argument in support of eight interrogatories.  At a minimum, plaintiffs as the moving parties must identify the discovery requests they feel have not been responded to and why.  Since argument is put forth only for the eight individual requests discussed by plaintiffs in their brief, the court will address only those eight requests.  If plaintiffs have other, unexpressed arguments, they can file another motion to compel and provide support for their position on those discovery requests.  The court will not attempt to devine what plaintiffs' position is on those requests currently unsupported by argument.

way that it advertised and marketed 407TQ seed.  Land O'Lakes argues that

discovery as to these two varieties is not relevant because plaintiffs never

purchased those varieties and plaintiffs' claims are not premised on those

varieties.

In the realm of products liability, the admissibility of evidence of other

accidents is usually limited to accidents involving products which are

substantially similar to the product which injured the plaintiff in the case at

bar.  See Drabik v. Stanley-Bostitch, Inc., 997 F.2d 496, 508 (8th Cir. 1993);

Lewy v. Remington Arms Co., 836 F.2d 1104, 1108 (8th Cir. 1988).  Here,

plaintiffs have made no showing as to whether the 404LH and 405T varieties

are substantially similar or not to the 407TQ variety that they premise their

claims on.[3]  However, the issue before the court is not the ***admissibility*** of

evidence concerning the 404LH and 405T varieties, but rather the

***discoverability*** of such evidence.

The "question of relevancy is to be more loosely construed at the

discovery stage than at the trial . . ."  8 Charles A. Wright, Arthur R. Miller, &

Richard L. Marcus, Fed. Practice & Procedure, § 2008, at 99-100 (2d ed. 1994).

See also Hofer, 981 F.2d at 380.  The broader scope of relevance at the

discovery stage is based on the fact that, "in many cases the issues will not be

---

[3]The court recognizes, of course, that plaintiffs have not asserted a
products liability claim in this case and cites Drabik and Lewy analogously
rather than as controlling precedent.

clearly defined at the time discovery is sought, and one of the purposes of discovery is to identify and narrow the issues."  Wright, Miller & Marcus, <u>Fed. Practice & Procedure</u>, § 2008, at 100-101.  Information is "relevant" for purposes of discovery "if there is any possibility that the information sought may be relevant to the subject matter of the action."  <u>Id.</u> at 108-109.

In the <u>Hofer</u> case, which was a products case in which the plaintiff had been injured by a Model MH truck, the plaintiffs appealed the district court's refusal to allow them to conduct discovery on designs which preceded the Model MH, on the theory that the information would show that Mack had departed from a prior, safer design, the reasons for the departures from those earlier designs, and any comparisons by Mack of the crashworthiness and safety of the models.  <u>Hofer</u>, 981 F.2d at 379, 380.  The Eighth Circuit acknowledged that relevance for purposes of discovery was broader than relevance applied to the admissibility of evidence at trial, but nevertheless required that the party seeking the discovery make some threshold showing of relevance before the doors of discovery were opened wide.  <u>Id.</u> at 380.

The court noted that there was no black letter law governing this area of discovery, but that "discovery of similar, if not identical, models is generally permitted."  <u>Id.</u> at 380-381.  Rather, courts conduct a fact-specific inquiry concerning the extent of the similarities and dissimilarities between the various models and the basis for the discovery request.  <u>Id.</u> at 381.  The Eighth Circuit

held that the district court had not abused its discretion in refusing to order the discovery.  Id.  Also, because the plaintiff's experts had had access to the predecessor models, the court held that the district court's refusal to allow the discovery did not prejudice the plaintiff.  Id.

In Upsher-Smith Laboratories, Inc. v. Mylan Laboratories, Inc., 944 F. Supp. 1411 (D. Minn. 1996), Upsher-Smith Laboratories ("USL"), a distributor, had sued Mylan Laboratories ("Mylan"), a manufacturer, over an alleged breach of contract to supply a generic pharmaceutical product called Cimecon.  Id. at 1418.  USL had entered into a separate, similar agreement with Lemmon Co. for the distribution of a drug called Gemfibrozil.  Id. at 1443.  Mylan sought discovery of the documents related to the USL-Lemmon agreement on the theory that it would provide insight into USL's intentions and designs with regard to the aborted Cimecon contract.  Id.  The district court refused to order USL to provide the Lemmon documents, holding that Mylan had failed to make a sufficient showing of relevance as required by Hofer.  Id. at 1444.  The court stated that "we fail to see how the discovery of information on the structure, finance, and details of a supply agreement for a product which appears to have been added to USL's product line almost as an afterthought, and more than a year after patent expiration, could be reasonably calculated to lead to the discovery of admissible evidence concerning USL's . . . launch of its Cimecon private label."  Id.

11

Here, plaintiffs have not satisfied their burden under Rule 26 or the standard set forth in Hofer to establish a threshold level of relevance. Although plaintiffs allege that Land O'Lakes advertised the 404LH and 405T varieties the same as it advertised the 407TQ variety, no other facts are provided. The court is not aware of whether 404LH and 405T are even alfalfa seed varieties, although one might infer that. Beyond that, the court is not aware of what the sequence of the development of these varieties are–did 404LH and 405T precede or succeed the 407TQ variety? Are they covered under the same patent or patent application? Did the advertising for all three varieties occur simultaneously, or at different times? In different geographic locations? If at different times and places, how far apart? Did the advertisements appear in the same magazines or publications?

The scope of Rule 26 includes the discovery of information sought for impeachment purposes. 8 Wright, Miller, & Marcus, Fed. Practice & Procedure, § 2015, at 207 (stating that "discovery is commonly allowed in which the discovering party seeks information with which to impeach witnesses for the opposition."). It is conceivable that the information about the 404LH and 405T varieties, while not determinative of liability, may be useful to impeach Land O'Lakes. However, again, the plaintiffs have not articulated this argument and the court will not put words in their mouths.

Based on the record before the court presently, the court will not require Land O'Lakes to provide discovery on the 404LH and 405T varieties at the present time. However, this ruling is without prejudice to plaintiffs' ability to refile a motion seeking this discovery if plaintiffs can supply the requisite information to make a threshold showing of the relevance of discovery of these other varieties.

**2.     Interrogatory Number 2**

Plaintiffs sought information in interrogatory number 2 concerning "all research and laboratory testing records for your experimental designation(s) for" 407TQ, "(including, but not limited to, designation number FG 42M134) including all records indicating a date and the locations of your first breeder seed production." Land O'Lakes objected on the grounds of confidentiality, but agreed to provide a summary page and identified the breeder of record. Plaintiffs argue that the summary sheet does not constitute "all research and laboratory testing records" and that, therefore, Land O'Lakes' response is incomplete.

In its response to plaintiffs' motion to compel, Land O'Lakes does not address interrogatory number 2 individually. Rather, Land O'Lakes simply states that "Defendants have responded to the Plaintiffs [sic] requests." As to the argument that a protective order has been entered in this case, Land O'Lakes argues that the protective order still contemplates that objections may

be interposed and does not preclude the entry of additional safeguards. However, Land O'Lakes never ties the terms of the protective order to its position on interrogatory number 2. For example, Land O'Lakes never argues that additional protections are necessary before it provides the requested information and, if so, what types of protections.

Land O'Lakes has failed to explain why the information sought by plaintiffs was not already protected by the terms of the stipulated protective order entered in this case. In addition, Land O'Lakes does not acknowledge the incompleteness argument asserted by plaintiffs.

The court finds that plaintiffs have met their initial burden to show that an order to compel should issue as to interrogatory number 2. Land O'Lakes has failed to explain why it should not provide full and complete answers to this interrogatory. Accordingly, the court will grant plaintiffs' request as to interrogatory number 2.

### 3.    Interrogatories 18 and 19

Interrogatory numbers 18 and 19 requested Land O'Lakes to state its intended meaning as to the terms "patented Traffic Tested® genetics" and "patented genetics" when used in the context of advertisements for the 407TQ, 403T, 404LH, and 405T[4] seed varieties, and to identify the persons responsible

---

[4]The court has already discussed discovery of information about varieties 404LH and 405T in subsection B(1), *supra*.

for creating and approving the advertisements for publication. Land O'Lakes provided some information regarding the support for the advertising claims as to 407TQ and 403T,[5] but never identified specific persons who created, and specific persons who approved of, the advertising.

In its brief in response to plaintiffs' motion to compel, Land O'Lakes does not acknowledge the argument by plaintiffs that its responses to interrogatory numbers 18 and 19, as to the 407TQ and 403T varieties, is incomplete.

As to the 407TQ and the 403T varieties, it is clear that Land O'Lakes has not fully answered the questions posed in interrogatory numbers 18 and 19. Land O'Lakes never identified the specific persons who were responsible for creating and approving the advertising. Accordingly, the court will grant plaintiffs' motion to require Land O'Lakes to fully and completely answer the questions and to identify additional documents if any exist that are responsive to these requests.

## 4.    Interrogatory Number 26

Interrogatory number 26 requests Land O'Lakes to identify all documents, correspondence, articles, and studies which relate to, support, or negate your claim that "407TQ can deliver up to $729 more milk income per bag of seed vs. conventional varieties" and to identify the persons responsible

---

[5]Land O'Lakes voluntarily provided information about the 403T  variety, even though it is not the basis of plaintiffs' claims in this case because plaintiffs did purchase some of the 403T variety.

for creating and approving the advertisements for publication. Land O'Lakes identified a computer program called "Milk 2000" as the basis for the claim, but did not identify any other documents, correspondence, articles, or studies. Also, Land O'Lakes failed entirely to identify any specific persons who created, and specific persons who approved of, the advertising. The court will grant plaintiffs' request and order Land O'Lakes to respond fully to interrogatory number 26.

     **5.     Interrogatory Number 31**

Interrogatory number 31 requests Land O'Lakes to identify all documents, correspondence, articles, and studies which relate to, support, or negate your claim that 407TQ possesses "superior disease resistance," and to identify the persons responsible for creating and approving the advertisements for publication. Land O'Lakes defined the term "superior disease resistance" as referring to "the combined resistance to multiple disease pests." Land O'Lakes also indicated that all pest resistance claims are reviewed and approved by the National Alfalfa Variety Review Board. Land O'Lakes provided a document it called "Exhibit B." No other documents were identified. No objection to providing other documents was interposed.

Unfortunately, neither party has described fully what "Exhibit B" is or provided a copy to the court. However, plaintiffs did assert that Exhibit B failed to identify any of the people who were responsible for creating or

16

approving the advertisements in question.  At least in that respect, Land

O'Lakes' response is not complete.  Accordingly, the court will grant plaintiffs'

motion to require Land O'Lakes to completely and fully answer interrogatory

number 31.

###### 6.     Interrogatory Number 32

Interrogatory number 32 requests Land O'Lakes to identify all

documents, correspondence, articles, and studies which support or negate

Land O'Lakes' claim that "patented Traffic Tested® genetics deliver more yield

under every wheel," and to identify the persons responsible for creating and

approving the advertisements for publication.  Land O'Lakes stated that the

terminology was created by an advertising agent called Duff Company and that

the intended meaning of the terminology was to indicate that the seed was

tested for the traffic testing protocol established by Dr. Jim Moutray of ABI

Alfalfa and by Dan Undersander, a forage extension agronomist at the

University of Wisconsin–Madison.  Land O'Lakes failed entirely to identify any

specific persons who created, and specific persons who approved of, the

advertising.  Land O'Lakes also failed to identify any documents in response to

this request.  Accordingly, the court will order Land O'Lakes to provide a full

and complete answer to interrogatory number 32.

###### 7.     Interrogatory Number 33

Interrogatory number 33 asks Land O'Lakes to produce research data supporting or refuting its advertising claim for the 407TQ variety that that variety has "very fast recovery" and to identify the persons responsible for creating and approving that advertising claim. Land O'Lakes acknowledged that there was research data responsive to this discovery request, but refused to produce it on confidentiality grounds. Land O'Lakes never identified any persons associated with the creation or approval of the advertising claim. In its brief, Land O'Lakes did not address interrogatory number 33 individually nor did it explain why its concerns about confidentiality are not already satisfied by the protective order previously entered in this case. Accordingly, the court will order Land O'Lakes to provide a full and complete answer to interrogatory number 33.

### 8.    Interrogatory Number 42

Interrogatory number 42 asks for germination reports, purity tests, and any requests for laboratory or scientific testing made by Land O'Lakes to any testing facility from 2001 to the present for 407TQ, 403T, 404LH, and 405T varieties of seed. Land O'Lakes responded that the germination test results are printed on the bags of seed, but otherwise refused to respond to the request, interposing a confidentiality objection. Plaintiffs respond that all of the information requested in interrogatory number 42 is not printed on the seed bags. In its brief, Land O'Lakes did not address interrogatory number 42

individually nor did it explain why its concerns about confidentiality are not already satisfied by the protective order previously entered in this case. Accordingly, the court will order Land O'Lakes to provide a full and complete answer to interrogatory number 42.

## C.    Sanctions

Rule 37(a)(5) of the Federal Rules of Civil Procedure states that if the court grants a motion to compel, or if the requested discovery is provided after a motion to compel has been filed, "the court **must**, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." <u>See</u> Fed. R. Civ. P. 37(a)(5) (emphasis supplied).  The award of expenses is mandatory unless the court finds that the moving party failed to confer in good faith with the responding party prior to filing the motion, the responding party's refusal to respond was substantially justified, or other circumstances make an award of expenses unjust.  <u>Id.</u>  Plaintiffs have requested as part of the remedy in granting their motion to compel that Land O'Lakes be required to pay its reasonable costs and attorney's fees.

Neither party has addressed the provisions of Rule 37 in their briefs, other than the bare recitation of the request for relief contained in plaintiffs' brief.  If the plaintiffs wish to have the court award attorney's fees, they shall

file a motion seeking such relief within 20 days from the date of this order.
Plaintiff's motion should include an itemized accounting of attorney and
paralegal time spent on the motion, the hourly rate, information about the
attorney and/or paralegal in support of the hourly rate, and any law or
argument concerning whether Land O'Lakes' position was substantially
justified because the court ruled in its favor on the discovery of the 404LH and
405T varieties. Land O'Lakes shall have 10 days after service of plaintiffs'
motion to respond or object thereto.

## CONCLUSION

Based on the foregoing analysis, it is hereby

ORDERED that defendant Land O'Lakes provide full and complete
answers to interrogatories number 2, 18, 19, 26, 31, 32, 33, and 42 within 10
days of this order. If Land O'Lakes' previous response to any of these
interrogatories represents the full and complete response to plaintiffs' request,
Land O'Lakes shall submit an answer, under oath, attesting to the fact that no
other information is available that is responsive to the request. All responses
to which Land O'Lakes previously made a confidentiality objection shall be
subject to the protective order previously entered in this case.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration
of this order before the district court upon a showing that the order is clearly

erroneous or contrary to law. The parties have ten (10) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. <u>See</u> Fed. R. Civ. P. 72(a). Failure to file timely objections will result in the waiver of the right to appeal matters not raised in the objections. <u>Id.</u> Objections must be timely and specific in order to require review by the district court.

Dated February 10, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE